## LEPAGE HOMES, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF SOUTHINGTON
### (AC 22370)

Lavery, C. J., and Schaller and Dranginis, Js.

Argued October 17—officially released December 31, 2002

*Bridget C. Gallagher*, with whom, on the brief, was *LeAnne Baggetta*, for the appellant (plaintiff).

*Marjorie S. Wilder*, with whom was *Julie A. Morgan*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, LePage Homes, Inc., appeals from the judgments of the trial court, rendered in favor of the defendant, the planning and zoning commission of the town of Southington. On appeal, the plaintiff claims that the court improperly sustained the defendant's denial of its resubdivision application.[1] The defendant raises two jurisdictional issues as alternate grounds for sustaining the judgments. The defendant claims that the court improperly determined that the plaintiff was aggrieved. Additionally, the defendant claims that the plaintiff lacked standing to appeal from the denials. We conclude that the plaintiff is an aggrieved party with standing to appeal and therefore reject the defendant's alternate grounds for affirming the judgments. With respect to the merits of the plaintiff's appeal, we affirm the judgments of the trial court.

The court found the following facts. On April 1, 2000, the plaintiff entered into an option contract to purchase a certain piece of land (Archacki property) located at the end of Nunzio Drive in Southington. Nunzio Drive, a road that measures 600 feet in length, terminates in a cul-de-sac. The plaintiff intended to use the proposed resubdivision to extend Nunzio Drive and connect it to

---

[1] The plaintiff also appeals from the court's judgment sustaining the defendant's denial of the plaintiff's subdivision application. The parties agreed both at trial and at oral argument before this court that if the resubdivision appeal was denied, then there would be no basis for sustaining the plaintiff's appeal from the denial of the subdivision application.

property that it owned (LePage property) that abutted the Archacki property.[2]

On July 24, 2000, the plaintiff filed an application with the defendant,[3] seeking approval for a resubdivision of the Archacki property.[4] On July 26, 2000, the plaintiff applied for subdivision approval of the LePage property that would be connected to Nunzio Drive via the proposed resubdivision.

On August 15, 2000, the defendant held a public hearing during which several residents opposed the resubdivision.[5] The defendant subsequently denied the plaintiff's application for the resubdivision of the Archacki property. The defendant, in a letter mailed to the plaintiff, listed six factors as the reasons for the denial: "(1) The roadway, Nunzio Drive, had been accepted as a permanent cul-de-sac and no stub was noted or designated for future development; (2) Nunzio Drive was completed and accepted as a permanent cul-de-sac road; (3) The residents had an expectation upon purchasing their property on Nunzio Drive that the character of their neighborhood would not change. Extending the roadway would change the character of

[2] Both the Archacki and the LePage properties are located in the residential R-20/25 zoning district of the town of Southington.

[3] "The defendant is both a planning commission and a zoning commission. . . . Its duties in each category are separate yet related. As a planning commission its duty is to prepare and adopt a plan of development for the town based on studies of physical, social, economic and governmental conditions and trends, and the plan should be designed to promote the coordinated development of the town and the general welfare and prosperity of its people. . . . Such a plan is controlling only as to municipal improvements and the regulation of subdivisions of land." (Citations omitted.) *Purtill* v. *Town Plan & Zoning Commission*, 146 Conn. 570, 571–72, 153 A.2d 441 (1959).

[4] General Statutes § 8-18 provides in relevant part: " '[R]esubdivision' means a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map . . . ."

[5] General Statutes § 8-26 provides in relevant part: "No plan of resubdivision shall be acted upon by the commission without a public hearing. . . ."

the neighborhood; (4) The original developer of Nunzio Drive had no expectation of future development of Nunzio Drive and no stub was ever noted to denote any further development; (5) There would be a safety issue at hand based upon the change in design of the roadway; and (6) Approval would result in the future creation of a non-conforming lot on the existing portion of Nunzio Drive." The defendant also denied the plaintiff's application for the subdivision of the LePage property.

The plaintiff filed separate appeals to the trial court from the defendant's denials of its resubdivision and subdivision applications. After the court made a factual determination that the plaintiff was aggrieved by the defendant's denial of the resubdivision application, it addressed the reasons for the denial as articulated by the defendant. The plaintiff's proposed resubdivision would have increased Nunzio Drive to a length of 700 feet.[6] The court found that the defendant properly classified Nunzio Drive as a permanent cul-de-sac, and therefore it was subject to a 600 foot limitation.[7]

The court also noted that it was proper for the defendant to base the denial of the plaintiff's resubdivision application on safety concerns. The 600 foot maximum length for a permanent cul-de-sac ensured the safe ingress and egress of residents and emergency vehicles. The court dismissed both appeals, and this appeal followed. Additional facts will be set forth as necessary.

I

As an initial matter, we address the defendant's alternate grounds for affirming the judgments because those

---

[6] The record reveals that the plaintiff filed a request for a waiver of the 600 foot requirement, but the request was never acted on. If both of the plaintiff's applications had been granted, the length of Nunzio Drive would have been extended to 1200 feet.

[7] Section 3-03 of the Southington subdivision regulations provides that the maximum length of a permanent cul-de-sac in the residential R-20/25 zoning district of the town of Southington cannot exceed 600 feet.

grounds implicate the court's subject matter jurisdiction. Specifically, the defendant claims that the court improperly found that the plaintiff proved that it was aggrieved by the denial of the resubdivision application. The defendant also argues that the plaintiff lacked standing because the owner of the Archacki property did not sign the resubdivision application. We disagree.

## A

The defendant first claims that the plaintiff was not an aggrieved party. "The question of aggrievement is essentially one of standing. . . . The issue of standing invokes the trial court's subject matter jurisdiction. . . . The issue cannot be waived." (Citations omitted; internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 58 Conn. App. 441, 443, 755 A.2d 249 (2000). To establish standing, the plaintiff was "required to plead and prove some injury in accordance with our rule on aggrievement." (Internal quotation marks omitted.) *Fuller* v. *Planning & Zoning Commission*, 21 Conn. App. 340, 343, 573 A.2d 1222 (1990).

General Statutes § 8-8 (1) provides in relevant part that an " 'aggrieved person' includes *any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board*." (Emphasis added.) Our Supreme Court has stated that such persons are considered "automatically aggrieved." See *Smith* v. *Planning & Zoning Board*, 203 Conn. 317, 321, 524 A.2d 1128 (1987).

Before addressing the defendant's arguments, we set forth the appropriate standard of review. "Aggrievement presents a question of fact for the trial court." *Fuller* v. *Planning & Zoning Commission*, supra, 21 Conn. App. 343. "The scope of review of a trial court's factual decision on appeal is limited to a determination of whether it is clearly erroneous in view

of the evidence and pleadings. . . . Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts." (Internal quotation marks omitted.) *R & R Pool & Home, Inc.* v. *Zoning Board of Appeals*, 43 Conn. App. 563, 567, 684 A.2d 1207 (1996). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lauver* v. *Planning & Zoning Commission*, 60 Conn. App. 504, 509, 760 A.2d 513 (2000).

In the present case, the court heard evidence regarding the plaintiff's status as an aggrieved party. William D. LePage, the president of the plaintiff company, testified that the company owned the LePage property. Additionally, a certified copy of the deed to the LePage property and maps showing the relative positions of the Archacki and LePage properties with respect to Nunzio Drive were introduced into evidence. Collectively, that evidence established that the plaintiff owned the LePage property, which abutted the Archacki property and was the subject of a decision of the defendant. The plaintiff, therefore, clearly established statutory aggrievement.

The defendant nevertheless argues that the plaintiff's complaint in the resubdivision case is silent with respect to aggrievement pursuant to § 8-8 and, therefore, the plaintiff failed to satisfy the requirements of Practice Book § 10-3 (a). "Practice Book § 10-3 (a) provides that '[w]hen any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number.' Our Supreme Court has repeatedly stated, however, that [Practice Book] § 10-3 (a) is merely directory and not mandatory. . . . We have excused noncompliance with [Practice Book] § 10-

3 (a) where the record discloses that neither the opposing party nor the trial court [was] confused or misled as to the statutory basis of the party's claim." (Citations omitted.) *Skakel* v. *Benedict*, 54 Conn. App. 663, 684, 738 A.2d 170 (1999).

In the present case, our review of the record reveals that neither the court nor the defendant was confused or misled by the plaintiff's actions. The court questioned the defendant as to whether the fact that the plaintiff owned the property adjacent to that of the resubdivision satisfied the requirement of § 8-8. The defendant responded that it was a possibility, although not alleged in the complaint. Because the evidence demonstrated that the defendant was not misled, we conclude that the court's finding that the plaintiff was aggrieved was not clearly erroneous.

B

The defendant also claims that the plaintiff lacked standing because the plaintiff, and not the owners of the Archacki property, signed the resubdivision application. We disagree.

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 373-74, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991).

The plaintiff entered into an option contract to purchase the Archacki property on April 1, 2000. The option

remained in effect for a period of one year.[8] Paragraph five of the contract conferred to the plaintiff the right to obtain governmental and zoning approval for the property owned by the plaintiff.[9]

The plaintiff applied for the resubdivision on July 24, 2000. Suzanne LePage signed the application on the plaintiff's behalf. William LePage testified that she was an officer of the plaintiff corporation and authorized to execute documents on behalf of the plaintiff. The plaintiff had the contractual right to seek governmental and zoning approval for the proposed resubdivision. Section 5-01 of the Southington zoning regulations[10] permits the application to be "signed by the record owner or his agent . . . ." An authorized officer of the plaintiff corporation signed the resubdivision application. We conclude, therefore, that the plaintiff had standing to appeal from the defendant's decision to both the trial court and to this court.

## II

We now address the merits of the plaintiff's appeal. The plaintiff contends that the court improperly sustained the defendant's denial of the resubdivision application. Specifically, the plaintiff argues that the defendant improperly determined that (1) Nunzio Drive was a permanent cul-de-sac and (2) the proposed extension would violate the Southington subdivision regula-

---

[8] The parties to the contract subsequently extended the option to purchase the property until September 1, 2001.

[9] Paragraph five of the contract states: "Optionee [plaintiff] to have rights to obtain governmental and zoning approvals for said parcel and adjoining parcel owned by Optionee."

[10] The Southington subdivision regulations provide: "Final subdivision plans submitted to the Commission for action shall include the following requirements:

"5-01 APPLICATION

"An application, on a form provided by the Commission shall be submitted to the office of the Commission and *signed by the record owner or his agent* and shall be accompanied by a minimum fee . . . ." (Emphasis added.)

tion restricting permanent cul-de-sacs to a maximum length of 600 feet. We disagree.

As an preliminary matter, we set forth the applicable standard of review. "It is axiomatic that a planning commission, in passing on a resubdivision application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. . . . It is equally axiomatic that the trial court, in reviewing the action of a planning commission regarding a resubdivision application, may not substitute its judgment on the facts for that of the planning commission. . . . The conclusions of the commission must stand if even one of the stated reasons is reasonably supported by the record. . . .

"The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. . . . The trial court can sustain the [plaintiff's] appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal . . . . In reviewing the action of the trial court, we have to decide whether it could in logic and in law reach the conclusion that the [commission] should be overruled." (Citations omitted; internal quotation marks omitted.) *Pelliccione* v. *Planning & Zoning Commission,* 64 Conn. App. 320, 326–28, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001).

A

The plaintiff first claims that the court improperly determined that the defendant classified Nunzio Drive as a permanent cul-de-sac. Specifically, the plaintiff argues that because the regulations merely describe, and do not clearly define permanent and temporary cul-de-sacs, the defendant made an unreasonable interpre-

tation of the regulations in denying the resubdivision application.[11]

As a threshold matter, we must determine whether the regulations make a distinction between permanent and temporary cul-de-sacs. "The commission enjoys reasonable discretion in construing the regulations it is charged with enforcing." *Paige* v. *Town Plan & Zoning Commission*, 35 Conn. App. 646, 655, 646 A.2d 277 (1994), rev'd on other grounds, 235 Conn. 448, 668 A.2d 340 (1995). Additionally, "[w]ords used in statutes and regulations are to be construed according to their commonly approved usage. . . . Or, stated another way, statutory language is to be given its plain and ordinary meaning." (Citations omitted; internal quotation marks omitted.) *Federico* v. *Planning & Zoning Commission*, 5 Conn. App. 509, 512–13, 500 A.2d 576 (1985).

Black's Law Dictionary (6th Ed. 1990) defines 'permanent' as "[c]ontinuing or enduring in the same state, status, place, or the like, without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient. . . . Generally opposed in law to 'temporary,' but not always meaning 'perpetual.' " (Citation omitted.) Furthermore, the regulations set a 600 foot limit on the length of a permanent cul-

---

[11] Section 3-03 of the Southington subdivision regulations, entitled "PERMANENT CUL DE SACS—MAXIMUM LENGTH," provides in relevant part: "Dead-end or cul-de-sac street shall not, in general, exceed six hundred (600) feet in length in the R-12 or R20/25 zone . . . and shall be constructed in accordance with the appropriate street specifications and/or administrative order and the standard design layout. . . ."

Section 3-04 of the Southington subdivision regulations, entitled "TEMPORARY CUL DE SAC," provides: "If adjacent property is undeveloped and future continuation of the proposed street is necessary for convenient movement of traffic representing the best overall traffic pattern, the cul-de-sac shall be extended to the abutting property lines. Reserved strips of land shall not be left between the end of a proposed street and an adjacent piece of property."

de-sac although a temporary cul-de-sac must extend to the abutting property line. Accordingly, the subdivision regulations clearly establish a distinction between permanent and temporary cul-de-sacs.

We now must address whether the court properly concluded that the defendant correctly determined that Nunzio Drive was a permanent cul-de-sac. We conclude that it did. The defendant based its decision that Nunzio Drive was a permanent cul-de-sac on the regulations. The length of the road was fixed at 600 feet, the maximum length for a permanent cul-de-sac. Furthermore, the end of the cul-de-sac did not extend to the abutting property line and left no reserved space, as temporary cul-de-sacs are required to do pursuant to § 3-04 of the regulations.

On the basis of the record, we cannot say that the defendant acted in an unreasonable, arbitrary or illegal manner in finding that Nunzio Drive terminated in a permanent cul-de-sac. Accordingly, the court properly concluded that the defendant correctly classified Nunzio Drive as a permanent cul-de-sac.

B

The plaintiff also claims that the defendant improperly determined that the proposed extension of Nunzio Drive would have exceeded the length requirements of the regulations. Specifically, it argues that the proposed extension would be a 700 foot temporary cul-de-sac, which would eventually be connected to another street, creating a 600 foot cul-de-sac with an opening to a second 600 foot cul-de-sac. We disagree.

Section 2-22.1 of the subdivision regulations defines a "cul-de-sac or dead-end street" as a "street having only one intersection with another street and having a turn-around of a radius according to the appropriate design standards, establishing the possibility of an unin-

terrupted flow of traffic." Merriam-Webster's Collegiate Dictionary (10th Ed. 1999) defines "cul-de-sac" as "a street or passage closed at one end."

The plaintiff contends that the key characteristic of a cul-de-sac is the presence of a "turn-around." A "turn-around" need not be closed, but instead could be open, allowing the road to be extended farther. According to the plaintiff's interpretation, it would be possible to have a road of limitless length classified as a cul-de-sac, so long as there was a "turn-around" every 600 feet.

We disagree with plaintiff's novel interpretation of a cul-de-sac and the 600 foot length restriction. A cul-de-sac is a road that is closed at one end. Additionally, allowing traffic to flow in two directions through an open "turn around" would not allow for the possibility of an uninterrupted flow of traffic because a vehicle using the "turn around" would have to stop and wait before proceeding to ensure that there was no oncoming traffic. We conclude, therefore, that the proposed resubdivision exceeded the 600 foot limitation on permanent cul-de-sacs. The plaintiff's application, if granted, would have constituted a violation of an existing subdivision regulation. "A commission may legally base subdivision application denials on zoning violations inherent in the plan itself as submitted . . . ." (Internal quotation marks omitted.) *Krawski* v. *Planning & Zoning Commission*, 21 Conn. App. 667, 672, 575 A.2d 1036, cert. denied, 215 Conn. 814, 576 A.2d 543 (1990). Because a violation of the subdivision regulations was inherent in the resubdivision application, we conclude that it was not an unreasonable, arbitrary or illegal act by the defendant to deny the plaintiff's application. Accordingly, the court properly concluded that the defendant correctly denied the plaintiff's resubdivision application.

The judgments are affirmed.

In this opinion the other judges concurred.