NICOLE PAUL *v.* TOWN PLAN AND ZONING
COMMISSION OF THE TOWN
OF FAIRFIELD
(AC 31490)

Bishop, Alvord and Pellegrino, Js.

Argued March 16—officially released August 30, 2011

*Richard H. Saxl,* for the appellant (defendant).

*John F. Fallon,* for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, the Fairfield plan and zoning commission (commission), appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Nicole Paul, from the commission's denial of her subdivision application. On appeal, the commission claims that the court improperly (1) concluded that the evidence was insufficient to support the commission's determination that the plaintiff's proposed subdivision road was a "cul-de-sac" as defined in § 2.1.6 of the Fairfield subdivision regulations (regulations) and (2) concluded that the commission's requirement for an open space dedication required evidence of an immediate need for the dedicated land. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. During November, 2007, the plaintiff filed an application to subdivide her property on Mill Hill Road in the Southport section of Fairfield (property) into four residential lots. The property is bounded on the north by a public school, on the east by private property, on the south by Mill Hill Road and on the west by a large parcel owned by Albert Garofalo, the plaintiff's deceased grandfather. Located in a residential zone, the total area of the plaintiff's property is 2.63 acres or 114,958 square feet. The lots in the proposed subdivision ranged in size from 21,333 to 29,799 square feet, which was in compliance with the relevant zoning requirements. Access to the lots was provided as follows: Mill Hill Road provided sole access to one of the lots; the proposed subdivision road provided sole access to two

of the lots; and the final lot, located on the corner of Mill Hill Road and the proposed subdivision road, could be accessed by either road.

On March 11, 2008, the commission held a public hearing on the application. Most of the discussion at that hearing addressed two principal issues, the safety of the roads in the vicinity of the proposed subdivision and the classification of the proposed subdivision road as either a cul-de-sac or a temporary turnaround. Section 2.1.6 of the regulations provides: "Cul-de-sacs are streets closed at one end and which will not be extended in the future. No such street shall provide sole access to more than ten (10) building lots nor shall any such street provide sole access to less than three (3) building lots." The plaintiff acknowledged that the proposed subdivision road provided sole access to only two building lots. She indicated, however, that she was one of the beneficiaries of her grandfather's estate and that the plan was to subdivide the estate property, which consisted of approximately twenty-six acres of largely undeveloped land. When the estate property was subdivided, the plaintiff stated that her proposed subdivision road would likely provide sole access to as many as four additional lots. She therefore requested that the commission either waive the limitation of § 2.1.6 or find that the proposed subdivision road was not a cul-de-sac because the road would be extended in the future.

Following an executive session held on March 25, 2008, the commission voted to deny the plaintiff's subdivision application. The application was denied for the stated reasons that her proposal (1) failed to provide a safe and convenient system for present and prospective traffic, (2) contained a proposed cul-de-sac with sole access to two lots, which was not in conformance with § 2.1.6 of the regulations and (3) failed to dedicate open space pursuant to § 2.3.1 of the regulations.

The plaintiff appealed to the Superior Court from the commission's denial. During the pendency of that appeal, the court granted the commission's motion to allow evidence outside of the record with respect to the "recreational" use of the athletic field abutting the plaintiff's property. Subsequently, on May 15, 2009, the court held a hearing on the plaintiff's appeal. The court issued its memorandum of decision on June 11, 2009. After determining that the plaintiff was aggrieved, the court acknowledged the commission's concession that its first reason for denial, i.e., the failure to provide a safe and convenient system for traffic pursuant to § 2.1.5, was not an appropriate reason for denial and could not be sustained by the court. The court then concluded that the denial of the application could not be sustained on the basis of the commission's stated reason that the proposed subdivision road was a cul-de-sac. Specifically, the court determined that the commission ignored the definition of cul-de-sac in the regulations, having made no finding that the road would "not be extended in the future." Moreover, the court found that the record was devoid of any evidence that would support such a conclusion.

With respect to open space dedication, the court noted that the regulations *do not require* applications for small subdivisions, which are less than four acres and fewer than five lots, to provide for open space. However, the commission *may in its discretion*, pursuant to § 2.3 of the regulations, require open space dedication in small subdivisions if it determines that the subject property is adjacent to "existing open space, park or recreational land" and that such a dedication would accomplish one or more of the objectives set forth in § 2.3.1 of the regulations.[1] The court concluded

---

[1] Sections 2.3.1.1 through 2.3.1.6 of the Fairfield subdivision regulations provide the following objectives: "To promote the Town's Master Plan and other adopted open space and recreation plans for the Town." Fairfield Subdivision Regs., § 2.3.1.1. "To provide greenbelts, hiking and bridle trails connecting existing parks, trails and open spaces." Id., § 2.3.1.2. "To preserve

that there was no evidence in the record to support the commission's determination that the dedication of open space in the plaintiff's proposed subdivision would further any of those objectives.

The court also noted that the issue of whether the application could be denied for the plaintiff's failure to provide open space arose for the first time during the executive session on March 25, 2008, which was after the close of the public hearing. From its review of the transcript, the court determined that there was "little or no discussion of any need for open space arising out of the proximity of the plaintiff's property to the Mill Hill School" at the public hearing.

Having determined that none of the stated reasons for denial was supported by substantial evidence in the record, the court sustained the plaintiff's appeal. The commission filed the present appeal after this court granted its petition for certification.

We first set forth the applicable legal principles and standard of review that guide our analysis. In reviewing the plaintiff's subdivision application, the commission was acting in an administrative capacity. See *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, 283 Conn. 369, 374, 926 A.2d 1029 (2007). "When acting in its administrative capacity, a planning commission has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." (Internal quotation marks omitted.) Id.

Additionally, "a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [a zoning] commission must be upheld

land as undeveloped open space which preserves the appearance, character and natural beauty of an area." Id., § 2.3.1.3. "To preserve land for park and recreation purposes." Id., § 2.3.1.4. "To preserve land for the purpose of conserving natural resources." Id., § 2.3.1.5. "To preserve and protect particular areas and terrain having qualities of natural beauty or historic interest." Id., § 2.3.1.6.

by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission] . . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board." (Citation omitted; internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004). "[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 221, 779 A.2d 750 (2001).

I

The commission's first claim is that the court improperly concluded that the evidence was insufficient to support the commission's determination that the plaintiff's proposed subdivision road was a "cul-de-sac" as defined in § 2.1.6 of the regulations. As previously noted, § 2.1.6 defines a cul-de-sac as a street "closed at one end and which will not be extended in the future . . . ." The commission argues that the court interpreted the phrase "in the future" to mean that there was no " 'realistic possibility' " that the street would ever be extended, whereas the commission interpreted the phrase to mean within the immediate or reasonably foreseeable future.

The commission's claim requires an interpretation of the town's subdivision regulations, which is a question of law. See *Thomas* v. *Planning & Zoning Commission*, 98 Conn. App. 742, 745, 911 A.2d 1129 (2006). "Because the interpretation of the regulations presents a question of law, our review is plenary. . . . [Z]oning regulations are local legislative enactments . . . and,

therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language [or . . . the relevant zoning regulation] as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Trumbull Falls, LLC* v. *Planning & Zoning Commission,* 97 Conn. App. 17, 21–22, 902 A.2d 706, cert. denied, 280 Conn. 923, 908 A.2d 545 (2006).

Although a commission's interpretation of its regulations is entitled to some deference, we are not bound by its legal interpretation. See *Northeast Parking, Inc.* v. *Planning & Zoning Commission,* 47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). Likewise, our review of the trial court's interpretation of the subdivision regulations is plenary. See *Balf Co.* v. *Planning & Zoning Commission,* 79 Conn. App. 626, 635, 830 A.2d 836, cert. denied, 266 Conn. 927, 835 A.2d 474 (2003).

As indicated by the court, the commission did not expressly state that it found the proposed subdivision road to be a cul-de-sac because the road will not be extended in the future. Instead, in its stated reasons for denial, the commission found that the road was a cul-de-sac pursuant to § 2.1.6 because "[t]he proposed turnaround has been designed in accordance with the provision for public cul-de-sacs in [§] 2.1.7."[2] The plaintiff's proposed subdivision road has a radius of fifty feet

---

[2] Section 2.1.7 of the regulations, which specifies the design standards for "turnarounds," provides in relevant part: "A turnaround with a minimum radius of fifty (50) feet and a paved area with a radius of forty-five (45) feet shall be provided at the closed end of all public cul-de-sac streets and all private cul-de-sac streets with a right-of-way of fifty (50) feet or more. Deadend streets which are to be projected into adjoining property at some future date and which provide sole access to one or more building lots shall

at one end. The court did not address the commission's reference to the design standards of § 2.1.7, except to say that the commission used "an inapplicable engineering standard to reach its conclusion . . . ." It concluded that the commission ignored the specific language in the regulation, "will not be extended in the future," and ignored all the representations made at the public hearing regarding the intent to develop the estate property into additional lots that would depend on the plaintiff's proposed subdivision road for access. For that reason, the court concluded that "the commission acted in an arbitrary and capricious manner and abused its discretion."

We agree with the trial court that the record does not support the commission's stated reason for denial, but we disagree with some of the court's reasoning in reaching that conclusion. "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005). The court concluded that the commission should not have considered the engineering standards set forth in § 2.1.7 of the subdivision regulations in determining whether the proposed subdivision road was a permanent cul-de-sac or a temporary turnaround. We disagree. "When examining the regulations, [w]e . . . are guided by the principle that the [commission] is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . ." (Internal quotation marks omitted.) *Kraiza* v. *Planning & Zoning Commission*, 121 Conn. App. 478, 492, 997 A.2d 583, cert. granted on other grounds, 298 Conn. 904, 3 A.3d 70 (2010).

be provided at the closed end with a turnaround with a minimum radius of forty (40) feet. . . ."

In making its finding as to whether the proposed subdivision road was a cul-de-sac or a temporary turn-around, the commission could consider the design standards set forth in § 2.1.7 to make a determination as to the future use of that road. Even though the commission did not state expressly that the road will not be extended in the future, a fair reading of its reason for denial is that the commission inferred that the cul-de-sac would not be extended in the future because the plaintiff had designed the road in accordance with the engineering standards required for a permanent cul-de-sac rather than the less rigorous design standards for a temporary turnaround. The plaintiff's proposed subdivision road, having a radius of fifty feet at one end, met the design requirements for a permanent cul-de-sac. If the plaintiff intended the road to be extended in the future, the commission argues that it would have designed the road with a radius of forty feet in accordance with the standards for a temporary turnaround.

In its stated reason for denial, the commission relied solely on the fact that the proposed road met the engineering requirements for a permanent cul-de-sac[3] as set forth in § 2.1.7. The fatal flaw in the commission's argument is the actual language of that regulation. A permanent cul-de-sac must have "a *minimum* radius of fifty (50) feet" whereas a dead-end street that will be extended "at some future date"[4] must have a turnaround

---

[3] Although the regulations do not use the word "permanent" in the definition of cul-de-sac, the definition does includes the language "will not be extended in the future"; Fairfield Subdivision Regs., § 2.1.6; which implies permanence. See *LePage Homes, Inc.* v. *Planning & Zoning Commission*, 74 Conn. App. 340, 349, 812 A.2d 156 (2002) ("Black's Law Dictionary [6th Ed. 1990] defines permanent as [c]ontinuing or enduring in the same state, status, place, or the like, without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient. . . . Generally opposed in law to temporary, but not always meaning perpetual." [Internal quotation marks omitted.]).

[4] Section 2.1.7 of the regulations also refers to such a dead-end street as a temporary turnaround.

with "a *minimum* radius of forty (40) feet." (Emphasis added.) Fairfield Subdivision Regs., § 2.1.7. The commission claims that the plaintiff's road is not a road that will be extended in the future because its radius is fifty feet rather than forty feet. The regulation, however, provides that a temporary turnaround must have a *minimum* of forty feet. The fact that the plaintiff's road provides a greater radius, ten feet more than the stated minimum, cannot, by itself, logically lead to the conclusion that it was not intended to be a temporary turnaround. The proposed road meets the criteria established for a temporary turnaround, i.e., a road to be extended in the future, because it has a minimum radius of forty feet.

We therefore conclude that the commission's determination that the plaintiff's proposed subdivision road was a cul-de-sac was improper because (1) the road does meet the engineering requirements for a temporary turnaround, (2) the evidence in the record established that the plan was for the road to be extended in the future to accommodate additional lots[5] and (3) there was no evidence in the record that the road would not be extended in the future.[6] Accordingly, that stated

---

[5] The estate of Garofalo had not been settled prior to the submission of the subdivision application or the public hearing. During the public hearing, the plaintiff's counsel repeatedly told the commission members that the proposed road was not a cul-de-sac as defined in § 2.1.6 of the regulations because it would be extended in the future when the estate property was subdivided. The plaintiff's engineer and surveyor, David Huntington, also spoke at the public hearing. Huntington had prepared a preliminary plan, which was submitted to the commission, showing the extension of the road to accommodate additional lots on the estate property.

[6] The regulations do not define the term "future." "Where an ordinance does not define a term, we look to the common understanding expressed in dictionaries." (Internal quotation marks omitted.) *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 623, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003). The dictionary definition of future is a "time that is to come . . . ." Merriam-Webster's Collegiate Dictionary 510 (11th Ed. 2003). The commission claims that the term must be interpreted to mean " 'immediate or reasonably foreseeable future,' " but the regulations do not include that additional language. See *Buttermilk Farms, LLC* v.

reason for the commission's denial of the plaintiff's subdivision application cannot be upheld.[7]

## II

The commission next claims that the court erroneously concluded that its denial of the plaintiff's application for her failure to provide open space was improper. It argues that the court reached that conclusion on the basis of an incorrect assumption that an immediate need for open space must be demonstrated before dedication can be required. We disagree with the commission's interpretation of the court's decision, and we conclude that the court properly determined that there is nothing in the record that indicates that any of the open space objectives listed in § 2.3.1 of the regulations[8] would be furthered by the dedication of open space in the plaintiff's proposed subdivision.

At the public hearing on March 11, 2008, the issue of open space was not discussed to any significant degree. Twice it was mentioned that the size of the proposed subdivision *did not* trigger mandatory open space dedication: once by a commission member and once by the plaintiff's counsel. The discussion then turned to

---

*Planning & Zoning Commission,* 292 Conn. 317, 327, 973 A.2d 64 (2009) ("because subdivision regulations adopted by a planning and zoning commission are in derogation of common-law property rights, the scope of the enabling statute granting the power to adopt such regulations should not be extended by construction beyond the fair import of its language, or to include by implication that which is not clearly within its express terms").

[7] At oral argument before this court, the commission argued that the proposed road could not be a temporary turnaround because, if it was, one of the proposed lots would be an "illegal lot" located more than forty feet from the road. This claim was not made to the trial court nor was it briefed on appeal. We therefore decline to review it. "We generally do not consider claims raised for the first time at oral argument." *Zenon* v. *Mossy,* 114 Conn. App. 734, 736 n.2, 970 A.2d 814 (2009).

[8] Although six objectives are listed, the commission indicated that it was relying on § 2.3.1.4 of the regulations, which permits the commission to require open space in small subdivisions "[t]o preserve land for park and recreation purposes."

whether the subsequent addition of lots from the estate property would trigger that requirement, and the consensus was that open space would have to be provided because of the acreage of the estate property.

At only one point during the public hearing was it mentioned that the plaintiff's property was adjacent to Mill Hill School. One of the commissioners, who referred to the provision allowing the commission to require open space in small subdivisions if a dedication would further any of the stated objectives in § 2.3.1, inquired if it would be possible to provide open space in this subdivision. The plaintiff's engineer responded: "No. We're pretty tight with the area in our lots. If you have been to that baseball field, it's a fair distance away—the backstop [is] a fair distance away from the property line, and when you get to the property line, this property goes up fairly steeply. So, I don't see that there would be any benefit to giving any portion of that property as open space. . . . That would severely impact the lots. It probably would eliminate one." The issue was not discussed any further. No comments were made by commission members or by any other speakers addressing the desirability of having the plaintiff dedicate open space next to the school for recreational purposes. Significantly, no commission member ever requested that the plaintiff dedicate open space pursuant to §§ 2.3 and 2.3.1 of the subdivision regulations.

In an executive session held on March 25, 2008, the commission members discussed the plaintiff's pending subdivision application. The public hearing had already been closed, and the plaintiff was not a participant at the executive session. The issue of whether the proposed subdivision road was a permanent cul-de-sac or a temporary turnaround was discussed at length. One of the commission members then indicated that he had visited the site and stated that "[t]here is no way I could vote for this without having an open space requirement from

2.3 of our subdivision [regulations]." Later, another commission member stated that he was in agreement with the comment about requiring an open space dedication because the proposed subdivision is near a school and "it meets our open space objective to take it even just for extra property to the school, additional buffer." In denying the application, the failure to dedicate open space was given as one of the stated reasons for the commission's decision.

In its June 11, 2009 memorandum of decision, the trial court found that there was substantial evidence in the record that the baseball field located on the grounds of Mill Hill School constituted " 'recreational land.' "[9] The court determined, however, that there was no evidence in the record to show that a dedication of open space would enhance the recreational purposes or that the current field was not fully functional in its present state. Further, as noted by the court, the evidence before the commission confirmed that the plaintiff's property was significantly higher than the school property, "making it highly unlikely that any portion of the plaintiff's property could be used to enhance the existing recreational facilities on that property."

Our review of the record supports the court's determinations. Open space dedication for small subdivisions, such as the plaintiff's subdivision, is not mandatory; it is discretionary and may be required *only if* the objectives set forth in § 2.3.1 of the subdivision regulations would be furthered by such a dedication. The only evidence before the commission was that the topography of the plaintiff's land made it impractical to require a dedication, because it was uphill from the adjacent

---

[9] At the hearing before the court on May 15, 2009, the parties stipulated that the Little League baseball field was under the control of the Fairfield parks and recreation department, that the department developed, maintained and improved the field and that the department scheduled public usage of the field after school hours and on weekends.

school property. There was no discussion at the public hearing as to the need for open space or the benefit that would accrue to the existing recreational area. The record is devoid of any evidence to support this stated reason for the denial of the plaintiff's application.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[10] We also are troubled by the fact that the issue of whether the plaintiff's application could be denied for failure to dedicate open space did not arise until after the close of the public hearing. Because open space dedication was not mandatory, given the size of the proposed subdivision, the plaintiff would have no way of knowing whether the commission would exercise its discretion and require it without some prior notice. If the commission had requested open space dedication at the public hearing, the plaintiff would have been given the opportunity to offer it or to provide explanations as to why the objectives of § 2.3.1 would not be furthered by the requirement. Instead, at an executive session held after the public hearing, the commission members privately determined that the commission could and would require the dedication, and, instead of approving the application with that condition, it chose to deny the application.

"Although proceedings before administrative agencies . . . are informal and are conducted without regard to the strict rules of evidence, the hearings must be conducted so as not to violate the fundamental rules of natural justice. . . . Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Citation omitted; internal quotation marks omitted.) *Unistar Properties, LLC* v. *Conservation & Inland Wetlands Commission,* 293 Conn. 93, 124–25, 977 A.2d 127 (2009).