# CHARLES COCKERHAM ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF MONTVILLE ET AL.
## (AC 34466)

Robinson, Alvord and Keller, Js.

Argued April 18—officially released October 8, 2013

*Richard S. Cody*, with whom, on the brief, was *Jon B. Chase*, for the appellants (plaintiffs).

*Michael P. Carey*, for the appellee (named defendant).

*Opinion*

ROBINSON, J. The plaintiffs, Charles Cockerham and Willmeta Cockerham, appeal from the judgment of the Superior Court, dismissing their appeal from the decision of the defendant Zoning Board of Appeals (board) of the Town of Montville (town). The board's decision upheld the town zoning enforcement officer's approval of an application for a zoning permit filed by the defendant John Bialowans, Jr., to construct a single-family residence on his property at 4 Glen Road, which abuts property owned by the plaintiffs at 6 Glen Road. The plaintiffs claim that the court improperly (1) interpreted §§ 1.3 and 4.13.5 of the Montville Zoning Regulations, and (2) afforded too much deference to the decision of the zoning enforcement officer, effectively depriving the plaintiffs of their right to challenge that decision

on appeal pursuant to General Statutes §§ 8-6 and 8-8.[1] We disagree and affirm the judgment of the trial court.[2]

The court's memorandum of decision adequately sets forth the undisputed facts and procedural history underlying this appeal. "Michael Donahue and his wife purchased the property at 6 Glen Road in 1961 and constructed a house on the lot. The house was constructed 39 inches from the boundary line with 4 Glen Road. In 1966, the Donahues acquired 4 Glen Road.[3] Zoning became effective in Montville on December 6, 1966.

"Michael Donahue acquired title to both lots from his wife. [He] died, and on November 13, 2003, his estate conveyed the property at 6 Glen Road to the plaintiffs. At the time, both properties at 6 Glen Road and 4 Glen Road were not in conformance with the existing zoning

---

[1] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located, notwithstanding any right to appeal to a municipal zoning board of appeals under section 8-6. . . ."

[2] In response to the plaintiffs' appeal, the board filed its own preliminary statement of the issues that included alternate grounds on which the judgment might be affirmed. See Practice Book § 63-4 (a) (1) (A). The plaintiffs filed a motion to strike the alternate grounds for affirmance, arguing that the board improperly sought to attack a 2009 ruling in the same zoning dispute. This court denied the plaintiffs' motion to strike without prejudice to the parties addressing the issue of whether the board should have obtained certification to appeal the 2009 decision in order to raise issues related to that decision as alternate grounds for affirmance. Because we affirm the court's decision, we need not address the alternate grounds for affirmance or whether they properly were raised.

[3] The record reveals that the Donahues acquired the property on January 13, 1966.

regulations. Both properties were in the R-20 zoning district. Six Glen Road had the required frontage, but lacked the required area. The house was also in violation of the side yard requirements. Four Glen Road did not have the required frontage or the minimum area required in the zone.

"The attorney who represented the plaintiffs in the purchase of the 6 Glen Road property was concerned about the zoning requirements and whether the division of the Donahue property into two small lots would be in compliance with the regulations. To protect the plaintiffs' interest, the attorney discussed the matter with the [zoning enforcement officer]. On November 13, 2003, the attorney wrote a letter to the [zoning enforcement officer] indicating that officer's agreement that 6 Glen Road could be purchased alone without 4 Glen Road and that this would not constitute a violation of the zoning or subdivision regulations. The [zoning enforcement officer] signified his agreement by endorsing the letter.

\* \* \*

"In November, 2004, [Bialowans] purchased the unimproved property at 4 Glen Road from the Donahue estate. His purchase and sale agreement was contingent upon obtaining building approval from the town. On April 14, 2005, the [zoning enforcement officer] issued a zoning permit to [Bialowans] and Carol Murcho for the construction of a single-family residence on the property.

"With the intent to build the approved single-family residence, [Bialowans] caused certain surveying, landscaping and construction work to be performed on the property. The plaintiffs observed this action and, after investigation, learned that the [zoning enforcement officer] had issued the zoning permit on April 14, 2005.

"The plaintiffs appealed the action of the [zoning enforcement officer] in issuing the zoning permit to the board. The board denied the appeal and stated as its reason that the appeal had not been taken within the time allowed by . . . § 8-6 [a] (1). The action of the board was appealed to [the Superior Court] (Docket Number CV-05-4004221). By memorandum of decision dated September 30, 2009, the court determined that the appeal had, in fact, been brought to the board within the time allowed by statute and remanded the matter back to the board for a hearing of the appeal as filed.

"In accordance with the remand, a public hearing on the plaintiffs' appeal to the board was held on April 7, 2010. At the hearing, the town attorney . . . summarized the proceedings. [Attorneys representing the plaintiffs and Bialowans also addressed the board.] Exhibits, including the record of the previous proceedings, were introduced. At the request of [Bialowans' attorney], Attorney Harry Heller spoke concerning the background of the regulations in question.

"The public hearing was continued to the meeting of May 5, 2010. After some discussion, it was voted to close the public hearing. The board members then discussed the issues. After such discussion, the board voted unanimously to deny the plaintiffs' appeal, stating as its reasons: The [board] finds that the zoning enforcement officer did not err as alleged by the plaintiffs, but acted legally and consistently within the framework of the [town's] [z]oning [r]egulations in granting a separate zoning permit for the property located at 4 Glen Road . . . as shown on assessor's map 106, lot 6A, a separate nonconforming lot."

The plaintiffs appealed from the board's decision to the Superior Court in accordance with § 8-8. The plaintiffs claimed, as they had before the board, that 4 Glen Road and 6 Glen Road had merged for zoning purposes

either under the common law or by operation of the town's zoning regulations.[4] In their brief to the court, the plaintiffs claimed that the board had violated or had misinterpreted the relevant zoning regulations and that the board's decision sustaining the action of the zoning enforcement officer was arbitrary, capricious, an abuse of discretion or a clearly unwarranted exercise of discretion. The court issued a memorandum of decision on September 9, 2011, dismissing the plaintiffs' appeal.

In its memorandum of decision, the court determined that the town's regulations provide that nonconforming lots as defined in § 4.13.5 of the Montville Zoning Regulations properly may be used for single-family detached residences, that § 4.13.5 defines a nonconforming lot as one that "was separately owned prior to the enactment of the [town's] Zoning Regulations," that the zoning enforcement officer had issued the zoning permit to Bialowans in accordance with the zoning enforcement officer's understanding that 4 Glen Road qualified as a nonconforming lot as defined in § 4.13.5, and that, in denying the plaintiffs' appeal, the board agreed with that understanding. The court explained that the zoning enforcement officer and the board each had interpreted the term "separately owned" to mean lots that have separate deeds and legal descriptions, whereas the plaintiffs argued that "separately owned" referred to lots not owned by the same person or entity.

In resolving the appeal in favor of the board's interpretation, the court relied in part on the analysis in *Bank of America* v. *Zoning Board of Appeals*, Superior

---

[4] As to the plaintiffs' common-law merger claim, the board found that a merger had not occurred, and the court concluded in summary fashion that the plaintiffs had failed to establish that the board had erred as to that issue. The plaintiffs do not challenge the court's ruling regarding common-law merger, and, therefore, we do not address the matter further in this opinion.

Court, judicial district of Middlesex, Docket No. CV-06-4006314-S (September 11, 2008) (46 Conn. L. Rptr. 430), in which the court considered conflicting interpretations of the term "owned separately" in construing a similar zoning regulation.[5] Id., 432. The court in *Bank of America*, after considering the common and ordinary meaning of the regulatory language, determined that the arguments offered by both parties were plausible interpretations of "owned separately." Id. Because consideration of the plain meaning of the text did not resolve the matter at hand, the court in *Bank of America* next considered "the purpose of the regulations as a whole so that the disputed language [could] be interpreted in a manner that [was] consistent with the intent of the drafters and the overall purpose of the regulations." Id. Again, the parties offered differing viewpoints with regard to the purpose of the regulations.[6] Id.

[5] In *Bank of America*, the plaintiff bank appealed from a decision of the defendant Zoning Board of Appeals of the Borough of Fenwick upholding the denial of the plaintiff's application for a zoning permit to construct a single-family residence on a lot that it held in trust. *Bank of America* v. *Zoning Board of Appeals*, supra, 46 Conn. L. Rptr. 430. The plaintiff's predecessor in interest had owned the plaintiff's undeveloped lot as well as an abutting lot that was improved with a cottage. Id. The borough's zoning enforcement officer had refused to issue the zoning permit based on his conclusion that the plaintiff's lot failed to satisfy an exception in the relevant zoning regulation that allowed for the construction of a dwelling on an otherwise undersized lot provided that on the effective date of the zoning regulations and continuously thereafter " 'such lot was *owned separately* from any adjoining lot, as evidenced in the Land Record . . . .' " (Emphasis in original.) Id. The plaintiff argued that " 'owned separately' " did not refer to the identity of the lots' owners but to the title relationship of the lots; in other words, the proper inquiry was whether the lots were described in separate deeds recorded in the land records. Id. The board on the other hand argued that " 'owned separately' " required ownership by different persons. Id.

[6] The plaintiff argued that the intent of the regulation was to merge only those undersized lots that have been used together as a single lot, not to punish owners who had maintained the separate legal identity of an abutting, unimproved lot; the board, on the other hand, argued that the regulation was intended to merge any undersized, adjoining lots that were owned by the same person, thus resulting in larger lots that were more likely to conform with the minimum lot size in the regulations, while at the same

The court held that, in light of the overall purpose of the regulations, which the parties had agreed was to increase lot sizes and to control density in the Borough of Fenwick, the board's interpretation was the more persuasive and that "the drafters of the regulations could reasonably [have] conclude[d] that in order to strike a reasonable balance between the desire to increase lot size and not deprive owners of undersized lots of the value of their property, those lots which shared a common owner would be merged, but the owner of an undersized lot who did not own the abutting property would be exempt from the merger." Id. The court found that, although not dispositive, its conclusion was consistent with, and therefore reinforced by, the interpretation applied by both the zoning enforcement officer and the planning and zoning commission, each of which recognized a merger of an undersized lot with an adjacent parcel for zoning purposes if both parcels were owned by the same person or entity. Id., 433. It also found that the record contained documented history that the board previously had interpreted and applied the regulation consistent with that position. Id. The court, quoting *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 611, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002), further explained: "A local board . . . is in the most advantageous position to interpret its own regulations and apply them to the situation before it. If a board's time-tested interpretation of a regulation is reasonable, that interpretation should be accorded great weight by the courts." (Internal quotation marks omitted.) *Bank of America* v. *Zoning Board of Appeals*, supra, 46 Conn. L. Rptr. 430.

The court in the present case agreed with the determination of the court in *Bank of America* that the term

time avoiding the effective confiscation of an undersized lot from a person or entity who owned no adjoining property that would benefit from a merger. *Bank of America* v. *Zoning Board of Appeals*, supra, 46 Conn. L. Rptr. 432.

"owned separately" reasonably could have two meanings, but ultimately it reached the opposite decision in determining which of those meanings was intended by the drafters of the zoning regulations before it. The court, consistent with the approach taken in *Bank of America*, found persuasive and deferred to the interpretation of the regulations upheld by the board. It based that decision on its finding that evidence had been presented to the board that the drafters of the town's zoning regulations had intended the interpretation adopted by the board and that the town's zoning officials consistently had applied that interpretation since the time that the zoning regulations were first enacted.[7] The court concluded: "[T]he reasons stated for the action of the board in upholding the decision of the [zoning enforcement officer] are supported by substantial evidence in the record and such reasons are pertinent to the considerations which the board was required to consider under the regulations. In reaching its conclusion, it has not been proven that the board acted arbitrarily, illegally, or in abuse of its authority." The court denied the plaintiffs' subsequent motion for reconsideration without comment. Following our granting of the plaintiffs' petition for certification to appeal, this appeal followed.

We begin by setting forth the applicable standard governing our review of this matter. "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the

---

[7] In particular, the court stated: "There was evidence that in [thirty] specific instances permits were granted, or other action taken, based upon the interpretation by zoning officials of the town that § 4.13.5 [of the Montville Zoning Regulations] granted nonconforming status to lots separately described and not owned by separate individuals prior to the enactment of the zoning regulations. Although the plaintiffs argue that there was no real evidence in the record of the [thirty] specific instances, it must be concluded that the zoning authorities of the town had been consistent in so interpreting the regulations in many instances over the years."

decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board. . . . [T]he zoning board of appeals makes a de novo determination of the issue before it, without deference to the actions of the zoning enforcement officer. . . .

"In reviewing the actions of a zoning board of appeals, we note that the board is endowed with liberal discretion and that its actions are subject to review by the courts only to determine whether they are unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts. . . .

"It is well settled that the courts should not substitute their own judgment for that of the board and that the decisions of the board will not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing. . . . The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. . . . Upon an appeal from the judgment of the trial court, we review the record to see if there is factual support for the board's decision, not for the contentions of the applicant . . . to determine whether the judgment was clearly erroneous or contrary to law." (Citation omitted; internal quotation marks omitted.) *Woodbury Donuts, LLC* v. *Zoning Board of Appeals*, 139 Conn. App. 748, 757–60, 57 A.3d 810 (2012).

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's

purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . These principles apply equally to regulations as well as to statutes. . . . *A court that is faced with two equally plausible interpretations of regulatory language, however, properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698–99, 784 A.2d 354 (2001). With those principles in mind, we turn to the claims raised in the present appeal.

I

The plaintiffs first claim that the court misinterpreted the relevant zoning regulations in concluding that the plaintiffs had failed to prove that the board acted arbitrarily, illegally, or in abuse of its authority in upholding the zoning permit. In particular, the plaintiffs argue that the court improperly relied on *Bank of America* v. *Zoning Board of Appeals*, supra, 46 Conn. L. Rptr. 430, which the plaintiffs claim is inapposite, and that the court failed to consider other decisions that had been rendered by courts in its own judicial district and that had construed nearly identical language in zoning regulations of other towns in a manner consistent with the interpretation advocated for by the plaintiffs.[8] We

_____

[8] Specifically, the plaintiffs cite to three cases: *Murphy* v. *Zoning Board of Appeals*, Superior Court, judicial district of New London, Docket No. CV-03-563733-S (August 6, 2003); *Vichi* v. *Zoning Board of Appeals*, Superior

do not agree with the plaintiffs' arguments and conclude in light of our review of the record and the regulations at issue that the court's decision was neither clearly erroneous nor contrary to law.

As previously set forth, "[b]ecause the interpretation of [zoning] regulations presents a question of law, our review is plenary." *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 652, 894 A.2d 285 (2006). Accordingly, we start with the text of the relevant portions of the town's zoning regulations. Section 4.2 of the Montville Zoning Regulations provides in relevant part that "[n]o building shall be erected . . . in any area of Montville without a Zoning Permit issued in conformance with these Regulations." The town's zoning enforcement officer is the official authorized by regulation to grant applications for zoning permits for the construction of permitted single-family dwellings "provided they meet the requirements of [the] Regulations." Montville Zoning Regs., § 4.2.2. Section 4.13.6 provides in relevant part that, in addition to meeting criteria not relevant here, "[l]ots for single family detached residences which meet the definition of nonconforming lot in Section 4.13.5 which have a total area or lot frontage less than the minimum required in the district may be used for single family detached residences . . . ." It is undisputed that 4 Glen Road fails to meet the area or frontage requirement for a buildable lot in the zoning district in which it is located. Accordingly, the zoning enforcement officer properly granted the zoning permit to construct a single-family detached residence on 4 Glen Road provided that the parcel met the definition of a nonconforming lot.

Section 4.13.5 of the Montville Zoning Regulations provides in relevant part: "For the purposes of these

Court, judicial district of New London, Docket No. CV-04-565653-S (August 26, 2004); and *Hescock* v. *Zoning Board of Appeals*, Superior Court, judicial district of New London, Docket No. CV-07-4105898-S (September 1, 2008).

Regulations, a non-conforming lot shall be defined as a lot which was *separately owned* prior to the enactment of the Zoning Regulations or any amendment thereto . . . ." (Emphasis added.) Section 1.3, which contains definitions for terms used throughout the town's zoning regulations, defines "lot, non-conforming" as "[a] parcel of land *owned individually and separately and separated from any adjoining tract of land* on the effective date of these regulations which does not meet the dimensional area, width, or design requirements for the zoning district in which it is located." (Emphasis added.) The terms "separately owned" and "owned individually and separately and separated from any adjoining tract of land" are not defined in the regulations.

Although § 4.13.6 of the Montville Zoning Regulations expressly refers to the definition for nonconforming lot contained in § 4.13.5, it contains no restrictive language barring consideration of the definition in § 1.3.[9] The two definitions ideally must be read, if possible, so as to give effect to each.[10] Both definitions, however, are equally

[9] The plaintiffs correctly note that the court does not mention the definition in § 1.3 of the Montville Zoning Regulations in its memorandum of decision, rather the court's analysis is limited to the "separately owned" language found in § 4.13.5. The plaintiffs raised the court's alleged failure to consider the § 1.3 definition in its motion for reconsideration, which the court denied without comment. Neither party asked the court to articulate whether in fact it had considered the definition for a nonconforming lot found in § 1.3 in reaching its decision to dismiss the plaintiffs' appeal.

[10] In construing zoning regulations, "[w]e . . . are guided by the principle that the [board] is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read [regulations] together when they relate to the same subject matter . . . ." (Internal quotation marks omitted.) *Paul* v. *Town Plan & Zoning Commission*, 130 Conn. App. 847, 855, 26 A.3d 100 (2011). Further, our review of the regulations as a whole reveals that, other than § 4.13 of the Montville Zoning Regulations, no other provision in the regulations concerns nonconforming lots, and therefore the definition in § 1.3 would be rendered superfluous if it did not apply to § 4.13. Tenants of statutory construction require courts to construe zoning regulations "so that no clause is deemed superfluous, void or insignificant." *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653.

ambiguous with regard to the issue before us. We agree with the plaintiffs that "separately owned" as used in § 4.13.5, can be read as a summary restatement of the definition in § 1.3. Read together, both definitions require that a parcel have some degree of separateness from abutting property at the time the zoning regulations were adopted in order to be deemed a preexisting, nonconforming lot. What is unclear is whether the drafters of the regulations intended that degree of separateness to pertain to the identity of the owner of the properties or to whether the properties had separate legal descriptions and had been conveyed by separate deeds. Therefore, it is necessary and proper to look beyond the text of the regulations.

As discussed previously in this opinion, the board heard testimony from Heller regarding the history of the town's efforts to adopt zoning regulations and to alleviate concerns of the town's vested landowners as to how nonconforming lots were to be treated under the regulations. Heller testified that in deciding whether a parcel qualified as a nonconforming lot, it has always been the custom of the town's zoning enforcement officer, both past and present, to look to whether or not the parcel in question has been described separately by deed from any adjoining parcel rather than to who owned the parcels.

It is the exclusive function of the board to weigh the evidence before it and to determine the credibility of witnesses. See *Mobil Oil Corp.* v. *Zoning Board of Appeals*, 35 Conn. App. 204, 212, 644 A.2d 401 (1994). Accordingly, the board was entitled to credit Heller's testimony and to reasonably infer the drafter's intent as to the regulatory language from that testimony, which was uncontested. Further, it was entitled to assign Heller's testimonial evidence greater weight than the case law cited by the plaintiff, which evidenced only how other southeastern Connecticut towns had

construed similar regulatory language. Because those decisions concerned different zoning regulations than those before the board, they were not binding authority. The board's findings that 4 Glen Road is a separate nonconforming lot and that the zoning enforcement officer acted legally within the meaning of the town's regulations are supported by substantial evidence in the record and are not unreasonable, arbitrary, or illegal. In the face of two equally plausible interpretations of the town's zoning regulations and substantial evidence to support the choice made by the board, we cannot conclude that the court erred in giving deference to the board's decision, especially when such deference has been expressly sanctioned by our Supreme Court. See *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 698–99. Accordingly, the plaintiffs' claim must fail.

II

The plaintiffs also claim on appeal that by affording too much deference to the decision of the zoning enforcement officer, the court effectively deprived them of their right to appeal in accordance with §§ 8-6 and 8-8. We conclude that this claim lacks merit.

First, the court was not reviewing the decision of the zoning enforcement officer, but the decision of the board. In doing so, the court did not, as suggested by the plaintiffs, merely defer to the zoning enforcement officer's interpretation of the zoning regulations at issue. Rather, it properly engaged in de novo consideration of the regulations before it, concluding on the basis of that review that the regulations were amenable to more than one interpretation and that the board's choice of interpretation was reasonable in light of the record. As explained in part I of this opinion, we conclude with respect to the court's construction of the applicable zoning regulations that the court properly deferred to the board's decision, not to the decision of

the zoning enforcement officer. Although in reaching its independent decision regarding the regulatory language at issue, the board considered and credited how the town's zoning enforcement officers, both current and past, had applied that language, the board did not simply defer to the decision of the zoning enforcement officer as suggested by the plaintiffs. Both the board and the court conducted a proper review of the plaintiffs' claims raised on appeal, and we reject the plaintiffs' suggestion that they were not afforded their full appellate rights under §§ 8-6 and 8-8.

The judgment is affirmed.

In this opinion the other judges concurred.